UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETTY JANE MAST,

    Plaintiff,

v.

SPEEDWAY LLC,

    Defendant.
_____/

Case No. 1:24-cv-106

Hon. Hala Y. Jarbou

## **OPINION**

This is a premises liability case arising under Michigan law. Plaintiff Betty Jane Mast sues Defendant Speedway LLC ("Speedway") for an injury she suffered after she slipped and fell on snow or ice near the entrance of a Speedway convenience store. (Am. Compl. ¶ 5, ECF No. 15.) Before the Court is Speedway's motion for summary judgment (ECF No. 37). For the following reasons, the Court will deny that motion.

### I. BACKGROUND

**A. Evidence**

On January 4, 2021, Mast went to the Speedway at 4235 Chicago Drive SW in Grandville, Michigan, during her lunch hour. (Mast Dep. 7-8, ECF No. 44-10.) It was a clear, sunny day. (*Id.* at 9.) The temperature was close to 32 degrees Fahrenheit. (Weather Reports and Data, ECF No. 44-1.) Some snow and ice were still present on the ground from an ice and snow storm that occurred a week or two earlier. (*See* Mast Dep. 27-28.)



**Photo of East side of Speedway (ECF No. 44-2, PageID.298), next to Photo of Mast's vehicle parked at Speedway on January 4, 2021 (ECF No. 44-3, PageID.300)**

Mast arrived at Speedway at 11:16 a.m.  She drove a white Buick SUV and parked on the east side of Speedway, near propane tank storage cages and an air compressor.  (Surveillance Photo, ECF No. 44-3, PageID.300.)  Mast then walked around the side of the store toward the front, where there is a raised sidewalk in front of the store entrance, surrounded by a yellow curb.  (Mast Dep. 7.)  Photographs from that day show snow on the ground in several areas: (1) between the side of the building and the parking spaces, (2) around the edge of the raised sidewalk, and (3) on the raised sidewalk itself, near the corner of the building.  (Photos, ECF No. 44-4, PageID.305-06.)



**Photo of Mast walking back to her vehicle (ECF No. 44-4, PageID.305)**

Mast walked through the parking area, entered the store without incident, and purchased her lunch. (Mast Dep. 12.) She then proceeded back toward her vehicle. (*Id.*; *see* Surveillance Photo, ECF No. 44-4, PageID.305.) But when she reached the end of the raised sidewalk—right before she turned the corner—she fell. (Mast Dep. 12-14.) She landed on her back and lost consciousness for some time. (*Id.* at 14.) What she remembers is that one moment, she was walking down the sidewalk, and the "next thing [she] knew," she woke up "in a pile of ice with a gentleman looking over [her]." (*Id.* at 12.) She believes the ice "[took] her feet from under [her]." (*Id.* at 14.) When she got up, she was standing in "a big pool of thick ice" at the end of the sidewalk that was about four feet wide and two to three inches thick. (*Id.* at 25-26.) Although the ice had some white coloration to it, she described it as "black ice" because it was not visible to her when walking down the sidewalk. (*Id.* at 26-27.)

3

Not feeling injured, Mast continued to her vehicle and drove back to work. (*Id.* at 17.) When she got to work, however, she was in severe pain. (*Id.*) She told her boss that she needed to go home because she slipped and fell on ice at Speedway and her whole body was sore. (*Id.*) In particular, she had "massive headaches" and her back was "very sore." (*Id.*) Later that day, she called Speedway's corporate office and told a Speedway representative that she "just had a massive fall" and wanted to report it. (*Id.* at 71.)

Speedway's corporate office then notified Amanda Wolf, the manager at the Grandville Speedway, that a customer had fallen. (Wolf Dep. 11, ECF No. 44-11.) Wolf testified that Speedway employees are responsible for ensuring that the sidewalk is clear of snow and ice. (*Id.* at 15.) For instance, when any employee observes snow or ice that is "above [shoe level] or [they] [feel] like it could make somebody slip, [they] would salt or shovel." (*Id.* at 16.) Employees were supposed to clear "all of the sidewalk area." (*Id.* at 18.) Speedway posted a "safety calendar" on the wall during the winter months that reminded employees to check for ice or snow on the sidewalk and salt or shovel as needed. (*Id.* at 16-17, 18.) Employees were supposed to sign the calendar at the bottom, indicating that they read the requirement to shovel and salt the sidewalk as needed. (*Id.* at 17-18.) Speedway discarded these calendars at the end of each month. (*Id.* at 18.) As for the parking lot, Speedway hired a snow-plow service to plow it when more than two inches of snow accumulated. (*Id.* at 15-16.)

Wolf acknowledged that snow had accumulated near the spot where Mast slipped and fell. (*Id.* at 26-27.) She noted that there were diagonal yellow lines on the ground indicating where a person should not park or walk, but those lines were on the asphalt, not the raised sidewalk. (*Id.* at 14, 27.)

### B. Procedural History

Mast initially brought this suit in Kent County Circuit Court. (ECF No. 1-1.) Speedway then removed the action to this Court under this Court's diversity jurisdiction per 28 U.S.C. §§ 1332 and 1441. Mast filed an amended complaint on March 22, 2024, asserting a premises liability claim from the slip and fall on January 4, 2021. Speedway has moved for summary judgment on this claim.

## II. STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Parks v. LaFace Recs.*, 329 F.3d 437, 444 (6th Cir. 2003) (citing Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the Court views the evidence and draws all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But that does not mean that any amount of evidence, no matter how small, will save a nonmoving party from losing on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party has the initial burden of showing no genuine issue of material fact. *Plant v. Morton Intl'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If the moving party meets that burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. "[T]he trial judge shall then grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Id.*

## III. ANALYSIS

The Court has subject matter jurisdiction over this case based on this Court's diversity jurisdiction under 28 U.S.C. § 1332. The Court, therefore, applies Michigan substantive law to resolve Speedway's motion. *State Auto Prop. & Cas. Ins. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

### A. Elements of Premises Liability

To succeed in a premises liability action, the plaintiff must prove four elements. *Kandil-Elsayed v. F & E Oil, Inc.*, 1 N.W.3d 44, 51 (Mich. 2023). First, the defendant owed the plaintiff a duty of care. *Id.* Second, the defendant breached that duty. *Id.* Third, the defendant's breach was the actual and proximate cause of the plaintiff's injury. *Id.*; *see Hetherington v. Great Lakes Orthopaedic Ctr.*, No. 282006, 2009 WL 691873, at *2 (Mich. Ct. App. Mar. 17, 2009). And fourth, the plaintiff suffered damages. *Kandil-Elsayed*, 1 N.W.3d at 51.

Speedway argues that it is entitled to judgment as a matter of law because no genuine disputes of material fact remain as to whether (1) Speedway owed Mast a duty of care, (2) Speedway breached that duty of care, or (3) Speedway's breach caused Mast's injury.

#### 1. Duty

The duty a landowner or possessor of land owes an individual who enters the land depends on whether that individual is a trespasser, licensee, or invitee. *Stitt v. Holland Abundant Life Fellowship*, 614 N.W.2d 88, 91 (Mich. 2000). There is no genuine dispute that Mast was an invitee when she stopped at Speedway to buy lunch; Speedway concedes that point. (Def.'s Summ. J. Br. 11, ECF No. 38.) As such, Speedway owed Mast the highest duty of care under premises liability law. *See Stitt*, 614 N.W.2d at 92. It owed her a duty "not only to warn [her] of any known dangers, but the additional obligation to . . . make the premises safe, which require[d] [it] to inspect the premises and, depending on the circumstances, make any necessary repairs or warn of any

6

discovered hazards." *Id*. For ice and snow in particular, Speedway was obligated to take "reasonable measures . . . within a reasonable time after an accumulation of ice and snow to diminish the hazard of the injury to the invitee." *Kandil-Elsayed*, 1 N.W.3d at 72 (quoting *Quinlivan v. Great Atl. & Pac. Tea Co.*, 235 N.W.2d 732, 740 (Mich. 1975)).

Speedway argues that it did not owe Mast a duty of care because the ice and snow on the ground at its property presented an open and obvious danger, particularly in Michigan during wintertime. At the time Mast filed this action, Michigan courts held that "a possessor of land 'owes no duty to protect or warn' of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94 (Mich. 2012) (quoting *Riddle v. McLouth Steel Prods. Corp.*, 485 N.W.2d 676, 681 (Mich. 1992)). In 2023, however, the Michigan Supreme Court abrogated that rule in *Kandil-Elsayed*. *See Kandil-Elsayed*, 1 N.W.3d at 48. Consequently, it is no longer appropriate to consider the open and obvious nature of a danger when determining whether a land possessor owed a legal duty to the plaintiff. *See id.* at 69. Put simply, the open and obvious doctrine has no relevance to the duty question. *See Grilli v. Mon Jin Lau, Inc.*, No. 355398, 2023 WL 9010143, at *2 (Mich. Ct. App. Dec. 28, 2023).

Speedway argues that because *Kandil-Elsayed* issued after Mast filed this action, the case should not apply retroactively to this one. The Court disagrees. Michigan courts are unanimous on this issue—the rule in *Kandil-Elsayed* applies retroactively. *See Gabrielson v. Woods Condo. Ass'n*, --- N.W.3d ---, Nos. 364809, 364813, 2024 WL 56376, at *1 (Mich. Ct. App. Jan. 4, 2024); *accord Ditmore v. Major Cement Co.*, No. 366752, 2025 WL 582075, at *3 (Mich. Ct. App. Feb. 21, 2025); *Dinan v. City of Grosse Pointe Farms*, No. 364787, 2024 WL 4448754, at *3 n.1 (Mich. Ct. App. Oct. 8, 2024); *Weaver v. Flint Lodging, Inc.*, No. 363294, 2024 WL 501627, at *2 (Mich.

Ct. App. Feb. 8, 2024). This Court declines to hold otherwise. Where, as here, "questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions." *Am. Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 177 (1990) (O'Connor, J., plurality opinion). Although *Gabrielson* is not a Michigan Supreme Court opinion, "[f]ederal courts normally treat decisions of state courts of appeals on issues of state law as authoritative absent a strong showing that the state's highest court would decide the issue differently." *Laundree v. AMCA Int'l*, 908 F.2d 43, 45-46 (6th Cir. 1990). Speedway does not make such a showing here. Indeed, the Michigan Supreme Court indicated that it "intended retroactive application" of *Kandil-Elsayed* by applying its rule to the parties in that case, even though the conduct at issue took place before that ruling. *See Gabrielson*, 2024 WL 56376, at *6. Similarly, that court vacated and remanded "numerous cases" to the Michigan Court of Appeals in light of *Kandil-Elsayed*. *Id.* Accordingly, this Court will follow the holding in *Gabrielson*.

Not satisfied with this outcome, Speedway argues that the Michigan Court of Appeals is wrong. Speedway relies on *Buhl v. City of Oak Park*, 968 N.W.2d 348 (Mich. 2021) to say that *Kandil-Elsayed* does not deserve retroactive application. In *Buhl*, however, the issue was whether a legislative enactment had a retroactive effect. *See Buhl*, 968 N.W.2d at 351 ("The specific question before us is whether a GTLA amendment . . . can be retroactively applied."). By contrast, *Kandil-Elsayed* involved a judicial interpretation of common law. This distinction matters. "Statutes are presumed to apply prospectively," *Johnson v. Pastoriza*, 818 N.W.2d 279, 285 (Mich. 2012), whereas "judicial decisions are to be given complete retroactive effect," unless "injustice might result from full retroactivity." *League of Women Voters of Mich. v. Sec'y of State*, 975 N.W.2d 840, 865 (Mich. 2022) (first quoting *Hyde v. Univ. of Mich. Bd. of Regents*, 393 N.W.2d

8

847, 854 (Mich. 1986), then quoting *Lindsey v. Harper Hosp.*, 564 N.W.2d 861, 866 (Mich. 1997)). Thus, *Buhl* is inapposite.

In short, the open and obvious nature of any snow or ice on Speedway's property did not alter its duty to Mast. Instead, a fact-finder should consider whether the condition was open and obvious as part of its breach analysis (discussed below) and when deciding whether "the plaintiff's comparative fault" warrants a reduction in damages. *Kandil-Elsayed*, 1 N.W.3d at 71.

### 2. Breach

The next question is whether Speedway breached its duty of care. "Generally, the question whether a defendant's conduct fell below the standard of care is a question of fact for the jury." *Berryman v. Country Place Condo. Ass'n*, No. 362974, 2023 WL 9015108, at *2 (Mich. Ct. App. Dec. 28, 2023). As part of the breach inquiry, "the fact-finder may consider, among other things, whether the condition was open and obvious and whether, despite its open and obvious nature, the land possessor should have anticipated harm to the invitee." *Kandil-Elsayed*, 1 N.W.3d at 71. An open and obvious danger potentially increases the likelihood of breach. "Indeed, if a hazard is open and obvious, it should be *more* foreseeable for a defendant to notice the hazard, anticipate the danger it would cause to an invitee, and exercise reasonable care to remove or repair the danger." *Id.* at 71 n.27.

Here, a jury could reasonably infer that Speedway did not exercise reasonable care in maintaining its property on January 4, 2021. Mast's theory is that she slipped and fell on a wide patch of ice several inches thick, located on or by the raised sidewalk near the entrance to the store. She testified that she was lying on such an ice patch when she regained consciousness, and photos of the scene support her testimony. They show what appears to be white snow on and next to the sidewalk close to where she fell, as well as darker patches in that area that could be consistent with ice. Even Speedway argues that Mast "walked across a large, visible section of snow and ice."

9

(Def.'s Summ. J. Br. 5.)  A jury could reasonably conclude that the snow and ice on or by the sidewalk presented an unreasonable risk of injury for a customer approaching the store or departing from it.

Furthermore, because the snow and ice had apparently originated from a storm occurring a week or two earlier, a jury could reasonably conclude that Speedway did not take reasonable measures within a reasonable time to diminish the risk of injury.  Two weeks is more than enough time to investigate the sidewalk, identify the presence of snow and ice, and take action to clear it.  And considering that the temperature was at or above freezing on January 4, 2021, a jury could conclude that salting the ice would have been a reasonable and effective method of melting the ice patch or reducing its risk to a pedestrian.  Although Wolf testified about Speedway's general policy and practices with regard to snow and ice, there is no evidence that anyone followed those practices in the days before Mast's fall.  Because the photographs show snow and possibly ice on the sidewalk—which is where employees were supposed to shovel and salt—and because Mast testified about the presence of ice there on the day she fell, a jury could conclude that the employees did not salt or shovel that area.

Speedway argues that the snow and ice on its property were not "unreasonably dangerous" because such conditions are common during Michigan winters, and as such, it did not have a duty to clear them.  (Def.'s Summ. J. Br. 19-20.)  In doing so, however, it appears to be relying on the open and obvious doctrine to alter its duty.  The phrase "unreasonably dangerous" stems from cases discussing that doctrine; under those cases, there was no duty to protect an invitee from an open and obvious risk of harm unless "special aspects" of that condition made it "unreasonably dangerous."  *See Kandil-Elsayed*, 1 N.W.3d at 59 (quoting *Lugo v. Ameritech Corp.*, 629 N.W.2d 384, 386 (Mich. 2001)).  But as discussed above, that doctrine no longer impacts the landowner's

duty.  Moreover, it is not the case that Speedway had no duty to clear snow and ice from its walkways.  To the contrary, it had a duty to take "reasonable measures" within a "reasonable time" to clear that hazard or diminish its risk of injury.  *Kandil-Elsayed*, 1 N.W.3d at 72.  For the reasons discussed above, a reasonable jury could conclude that it breached that duty.

Next, Speedway argues that there is no evidence its employees were aware of black ice on the sidewalk.  A landowner's duty "extends only to conditions that [it] knows of or should have known about."  *Stout v. Chapman*, No. 355608, 2021 WL 5225932, at *2 (Mich Ct. App. Nov. 9, 2021).  In other words, "the plaintiff must 'establish that defendant, as a premises owner, possessed actual or constructive notice of the dangerous condition.'"  *Id.* (quoting *Lowrey v. LMPS & LMPJ, Inc.*, 890 N.W.2d 344, 350 (Mich. 2016)).  Constructive notice exists where "the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it."  *Lowrey*, 890 N.W.2d at 350.

Here, a jury could conclude that Speedway had constructive notice of icy and/or slippery conditions on the sidewalk by the front entrance to its store.  As discussed above, viewing the facts in the light most favorable to Mast, those conditions could have formed up to a week or two before Mast fell, which is sufficient time for a reasonable premises owner to discover them.  Also, the area where Mast fell is located in front of a storage cage for propane tanks that customers and employees used when exchanging tanks.  (Wolf Dep. 27-28.)  A jury could conclude that a reasonable premises owner would have discovered icy or slippery conditions in an area regularly used by employees and customers for making purchases or for entering the store.  Thus, Mast has presented sufficient evidence to create a genuine dispute about whether Speedway breached its duty of care.

11

### 3. Causation

The third element a plaintiff must prove is that the defendant's breach caused the plaintiff's injury. Two causation concepts work in tandem under this analysis:

> First, a plaintiff must demonstrate that "but for" the defendant's negligence, the plaintiff's injury would not have occurred. Once a plaintiff produces the factual support establishing a logical sequence of cause and effect, the plaintiff must also come forward with evidence supporting that the actual cause was proximate, meaning that it created a foreseeable risk of the injury the plaintiff suffered.

*Nathan v. David Leader Mgmt.*, 995 N.W.2d 567, 577 (Mich. 2022) (quoting *Taylor Est. v. Univ. Physician Grp.*, 941 N.W.2d 672, 677 (Mich. 2019)). "A plaintiff may rely on circumstantial evidence to establish causation, but the circumstantial proof 'must facilitate reasonable inferences of causation, not mere speculation.'" *Id.* (quoting *Skinner v. Square D Co.*, 516 N.W.2d 475, 480 (Mich. 1994)). Speculation exists where the theory of causation "while factually supported, is, at best, just as possible as another theory." *Skinner*, 516 N.W.2d at 480. "[T]he plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id.*; *see Est. of Owens v. Mantha Mgmt. Grp., Inc.*, No. 338392, 2018 WL 3186242, at *2 (Mich. Ct. App. June 28, 2018) ("A court must dismiss an action when causation remains an issue of pure speculation and conjecture, or the probabilities are evenly balanced at best.").

Speedway homes in on Mast's uncertainty about the cause of her fall. She testified that she did not see the ice on the ground before falling, and does not recall exactly what happened, but after she fell and regained consciousness, she looked around her and saw "black ice." (Mast Dep. 59.) Speedway argues this evidence is too speculative. The Court disagrees. Mast testified that she fell on her back and then saw ice underneath her. She concluded that the ice was the cause of her fall. Photographs of snow and possibly ice in the area where she fell support her theory. A reasonable jury could reach the same conclusion Mast did.

Speedway cites cases where courts held that the evidence did not permit a reasonable inference that the allegedly dangerous condition of a property was the cause of the plaintiff's injury. *See Stefan v. White*, 257 N.W.2d 206, 208 (Mich. App. 1977); *Flaminio v. Solbergs Greenleaf Sports Bar, LLC*, No. 337764, 2018 WL 5275784, at *5 (Mich. Ct. App. Oct. 16, 2018); *Est. of Owens*, 2018 WL 3186242, at *2. Those cases are distinguishable.

In *Stefan*, the plaintiff could not recall how or why she fell when leaving the exit of the defendant's home, and no evidence linked a dangerous condition at the home to her fall. *Stefan*, 257 N.W.2d at 207-08, 210. Thus, there was no reasonable basis for concluding that the premises owner was at fault. Here, Mast testified that she found herself lying on her back on a patch of ice after she regained consciousness. It is reasonable, and not speculative, to infer that the ice caused her to slip and fall.

In *Owens*, the decedent fell in a parking lot of the defendant's store and later died. *Owens*, 2018 WL 3186242, at *1. No one witnessed the fall, and due to his head injuries, the decedent could not explain why he fell. *Id.* There was "some testimony indicating the presence of ice in the parking lot," but "even if there was ice where decedent fell," the court concluded that a jury would be forced to guess whether the ice was the cause of his fall. *Id.* at *2. The decedent was "72 years old, had dropped foot, occasionally wore a leg brace, and walked with a limp." *Id.* "[I]t is just as possible that [he] stumbled, tripped, had a leg buckle, or suffered some type of medical event, causing him to fall to the ground, without the ice having any bearing on the matter." *Id.* Unlike that case, Mast has presented evidence that she fell as she was walking and landed on her back, which is consistent with slipping on ice. Also, photos show that snow and what could be a sheet of ice were directly in her path immediately before the fall occurred. There is no evidence

13

she had a physical impairment like the decedent in *Owens*. Under the circumstances, the evidence is sufficient to infer that, more likely than not, ice was the cause of her fall.

In *Flaminio*, the unsafe condition was "a door inside a tavern that opened inward, even by simply bumping or pushing against it, leading to a basement stairway that had no landing at the top and was comprised of 19 cement steps." *Flaminio*, 2018 WL 5275784, at *3. The asserted hazard was that "a person could bump, fall, lean, or stagger into or against the basement door causing it to open and in turn causing the person to tumble down the stairway." *Id.* But she could not recall what had happened. Emergency personnel found her in a highly intoxicated and semi-conscious state at the bottom of the stairs. *Id.* at *1. She later claimed that the unsafe door caused her fall. The court found that this theory was too speculative because there were many other possible reasons why the plaintiff could have fallen. It was just as possible that the door was already open before she went through the doorway, or that she herself opened the door, or that she fell while walking down the stairs; in any of these other scenarios, the allegedly dangerous condition would not have been the cause of her fall. *Id.* at *5. The possible causes of Mast's injury are not as limitless and uncertain as they were for the plaintiff in *Flaminio*. Mast's theory that she slipped and fell because of the ice or snow underneath her is not too speculative to proceed.

Speedway attempts to introduce uncertainty into Mast's testimony by pointing to places where she referred to a thick sheet of ice and other places where she referred to black ice. Regardless, ice is ice. In either form, it can cause a person to slip and fall. And any purported inconsistencies in her testimony are matters for the fact-finder to consider when assessing her credibility. The Court does not wade into credibility issues at the summary judgment stage.

Speedway also argues for the first time in its reply brief that there is another possible cause for Mast's fall: her leg gave out. According to Mast, later in the day on January 4, *after she fell*

on Speedway's property, her leg "completely gave out" while she was walking down some stairs and she fell. (Mast Dep. 38-39.) It happened "very fast." (*Id.* at 39.) She has experienced similar symptoms of "phantom leg" about "six other times" since her accident. (*Id.*) She attributes these events to nerve injury she suffered due to falling on her back at Speedway. (*Id.*)

A reply brief is not the proper place to make new arguments. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). At any rate, Speedway's new argument is not persuasive. Viewing the evidence in the light most favorable to Mast, her "phantom leg" symptoms could not have been the reason for her fall at Speedway because there is no evidence these symptoms occurred before her fall. A reasonable jury could conclude that these symptoms are an *effect* of her fall at Speedway, not the cause of it.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Speedway's motion for summary judgment. Genuine issues of material fact remain as to whether Speedway breached its duty of care and whether that breach is the cause of Mast's injuries.

An order will enter consistent with this Opinion.


Dated: March 3, 2025                     /s/ Hala Y. Jarbou
                                         HALA Y. JARBOU
                                         CHIEF UNITED STATES DISTRICT JUDGE